FILED: 1/17/2020 5:34 PM
David Trantham
Denton County District Clerk
By: Victoria Decuir, Deputy

CAUSE NO. 20-0531-462

| | |
|---|---|
| **KEVIN WALSH,** | **IN THE DISTRICT COURT** |
| **Plaintiff,** | |
| | **___ JUDICIAL DISTRICT** |
| **v.** | |
| **PHOENIX CLOSURES, INC.** | |
| **Defendant.** | **DENTON COUNTY, TEXAS** |

Plaintiff KEVIN WALSH ("Walsh" or "Plaintiff") hereby files its Original Complaint complaining of Defendant PHOENIX CLOSURES, INCORPORATED. ("Phoenix Closures" or "Defendant"). In support of the foregoing, Plaintiff would respectfully show as follows:

**<u>Discovery Control Plan</u>**

1. In accordance with Rule 190.1 of the Texas Rules of Civil Procedure, Plaintiffs hereby alleges hat discovery is intended to be conducted under Level 3 of Rule 190, Texas Rules of Civil Procedure.

**<u>Parties, Jurisdiction, and Venue</u>**

2. Plaintiff KEVIN WALSH is a natural person residing in the Denton County, Texas.

3. Defendant Phoenix Closures, Incorporated is an Illinois corporation that is based in Naperville, Illinois. Phoenix Closures previously designated Kevin Walsh as its Texas registered agent for service of process. Mr. Walsh assumes that his service as registered agent terminated along with his employment and, although Phoenix Closures does business in the state of Texas, Phoenix Closures has failed to designate a successor registered agent. As a result, Phoenix Closures can be served through the Texas Secretary of State at 1019 Brazos, Room 105, Austin, Texas 78701 or at P.O. Box 12079, Austin, Texas 78711-2079.



DISTRICT COURT ★ COUNTY OF DENTON, TEXAS ★

4. Phoenix Closures has continuous and systemic contacts with Texas, such that this Court has general jurisdiction over it. To the extent this Court does not have general jurisdiction over Phoenix Closures, it has specific jurisdiction over it. Phoenix Closures has directed its business activities toward the State of Texas, which activities include hiring a Texas-based sales manager, maintaining a Texas registration and Texas registered agent, and selling product in Texas. Plaintiff's cause of action arises out of certain behavior of Defendant which occurred in Texas, was directed at Texas, or had an effect in Texas. Plaintiff's claims arise out of Defendant's Texas contacts and exercising jurisdiction over Defendant is fair and reasonable.

5. Venue is proper in this County because a substantial part of the events or omissions giving rise to the claim occurred in Denton County. Mr. Walsh resided in Denton County when he was employed by Phoenix Closures and maintained his home office there. Mr. Walsh attempted to secure replacement employment from Denton County, Texas and such efforts were thwarted in the Denton County, Texas by the acts and omission of Defendant.

**Rule 47(c) Statement**

6. Pursuant to Texas Rule of Civil Procedure 47(c), Plaintiff states that, at this time, it is seeking monetary relief over $1,000,000.

**Conditions Precedent**

7. Pursuant to Texas Rule of Civil Procedure 54, Plaintiff pleads that all conditions precedent have been performed or have occurred.

**Background Facts**

8. Phoenix Closures in a full-service manufacturing firm specializing in injection-molded closures generally comprising plastic caps. Such closures are sold as a packaging





product to Phoenix Closures' customers who, in turn, resale such closures as part of their finished product.

9. Mr. Walsh was employed with Phoenix Closures for several years as a regional Sales Manager. His territory included the State of Texas and he has several customers in Texas. Mr. Walsh is an excellent salesperson. However, personality conflicts developed between Mr. Walsh and one of Phoenix Closures executives. As a result, Mr. Walsh and Phoenix agreed to part ways and Mr. Walsh executed a Separation Agreement, Release, and Waiver on October 4, 2019 (the "Separation Agreement"). A true and correct copy of the Separation Agreement is attached hereto as **Exhibit A** and is incorporated by reference.

10. While considering his options, Mr. Walsh was out of work for approximately four (4) months before finding a job at Bericap SC, LLC ("Bericap"). Bericap is a Canadian-based company that manufactures and sells plastic closures for food, beverage, and industrial markets. Bericap offered Mr. Walsh a job as a national Sales Manager, Food Closures. The job offered by Bericap paid better than his previous job at Phoenix Closures.

11. In Section 6 of the Separation Agreement states as follows:

> employees, or agents. Likewise, PHOENIX agrees to make no statements to any person or entity that could reasonably be viewed as tending to defame the personal or professional reputation of WALSH. Should PHOENIX receive any inquiries concerning WALSH's past employment with PHOENIX, such inquiries will be forwarded to PHOENIX's Human Resources Department. Such inquiries will be responded to by providing only the following information: WALSH's dates of employment and position/title.





Bericap and Phoenix Closures are competitors. Instead of limiting the discussion to Mr. Walsh's dates of employment and position/title, Ken Bauer, Phoenix Closures' VP of Human Resources sent Mr. Walsh the following email:

> Kevin,
>
> I have been contacted by Bericap seeking a reference. I informed them that you had signed a confidentiality agreement. I am attaching the agreement to this email for your reference. Our position is that Bericap is competitor and you cannot reasonably be expected to be able to perform similar work for Bericap without violating the terms of this agreement. Specifically Paragraphs 5 and 6
>
> We welcome a dialog to determine if we can come to a mutual (Bericap, you, and PHOENIX) understanding of areas or products.
>
> Respectfully submitted,
>
> Ken Bauer
> VP of HR
> kbauer@phxpkg.com<mailto:kbauer@phxpkg.com>
> phxpkg.com<http://phxpkg.com/>
>
> PHOENIX
> P 630 276 2513 M 630 853 8257
> 1899 High Grove Lane, Naperville, IL 60540

A true and correct copy of the Bauer email chain is attached hereto as **Exhibit B** and is incorporated by reference.

12. Paragraph 5 of the Employee Confidentiality Agreement (the "Confidentiality Agreement" is a simple nondisclosure provision which provides that:

> 5. An Employee shall not, without written consent of Phoenix, during the term of employment with Phoenix or thereafter, use for the benefit of Employee or others, or disclose to others, any Confidential Information obtained during the course of employment with Phoenix.

13. Paragraph 6 of the Confidentiality Agreement is a non-use provision, which provides that:



DISTRICT COURT COUNTY OF DENTON, TEXAS

> 6. An Employee shall not, during the term of employment with Phoenix, or without the written consent of Phoenix, for a period of eighteen (18) months after the termination of employment with Phoenix, engage directly or indirectly, for the benefit of Employee or others, in any activity or employment in the faithful performance of which it could be reasonably anticipated that an Employee would be required or expected to use or disclose any Confidential Information obtained during the course of employment with Phoenix. This covenant shall not be construed to limit in any way an Employee's obligation not to use or disclose Confidential Information as set forth in Paragraph 5 above.

A true and correct copy of the Confidentiality Agreement is attached hereto as **Exhibit C,** and is incorporated herein by reference.

14. Mr. Walsh's response to Mr. Bauer's assertion is as follows:

> If I understand paragraphs 5 & 6 correctly which seem to be of most concern per Ken's comment, I see no reason why I shouldn't be able to perform in an acceptable manner on behalf of Bericap and "not use or disclose any confidential information" for the next 15 months. Please keep in mind I say 15 months as I left Phoenix on October 4, 2019, 3 months ago (referencing the 18 months).

15. In response to Mr. Bauer's communications with Bericap, Mr. Walsh's job offer was made conditional on ""resolving this dispute and [his] receiving written confirmation from Phoenix Closures that [his] employment as Bericap's Sales Manager would not violate the non-compete section of the Confidentiality Agreement (Paragraph 6)." Mr. Walsh attempted to resolve this issue with Phoenix Closures, to no avail. At one time, he even offered to return his severance.

16. It is well settled under Texas law, that covenants that place limits on former employees' professional mobility or restrict their solicitation of the former employers' customers and employees are restraints on trade and are governed by the Covenants Not to Compete Act, Tex. Bus. & Com. §15.50. Section 15.50 provides that "a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made ***to the extent that it contains limitations as to time, geographical***





***area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promise.***"

17. Texas Courts have recognized the difference between covenants not to compete and non-disclosure agreements. *See Zep Mfg. Co. v. Harthcock,* 824 S.W.2d 654, 663 (Tex. App.—Dallas 1992, no writ) ("Noncompete covenants are different than nondisclosure covenants. Noncompete covenants restrain trade and are enforceable only if their terms are reasonable. *Id.* at 639; *see* Tex.Bus. & Com.Code Ann. § 15.50. Nondisclosure covenants, on the other hand, are not restraints on trade.") The Court further noted that non-disclosure agreements "do not necessarily restrict a former employee's ability to compete with the former employer." *Id.* Moreover, "[n]ondisclosure covenants do not prohibit the former employee from using, *in competition with the former employer,* the *general* knowledge, skill, and experience acquired in former employment."). *Id.* (emphasis in original).

18. Mr. Walsh has returned or made arrangements to return all Phoenix Closures property in his possession, custody, or control. At this point, Mr. Walsh has general knowledge and a knowledge of the customers he worked with. The identity of each of those customers is readily ascertainable through proper means. Mr. Walsh is 61 years old. If he loses the Bericap opportunity, another may not come for some time due to his advanced age.

19. On January 14, 2020, counsel for Mr. Walsh sent Phoenix Closures a letter seeking clearance for Mr. Walsh to work for Bericap. A true and correct copy of this correspondence is attached hereto as **Exhibit D**, and is incorporated herein. Phoenix Closures response is attached hereto as **Exhibit E**. As informed by the response, this lawsuit is necessary.





## Causes of Action

20. Plaintiff pleads all matters herein in the alternative.

21. Plaintiff pleads that all conditions precedent have occurred.

### Count One
### Breach of Contract

22. Plaintiff incorporates all previous allegations as if fully set forth herein.

23. Plaintiff and Defendant are parties to the Separation Agreement and the Confidentiality Agreement. Plaintiff tendered performance under the contracts and/or was excused from tendering performance by Defendant.

24. Defendant breached the contracts by, among other things, violating Paragraph 6 of the Separation Agreement and threatening to exercise remedies under the Confidentiality Agreement that are not available to it.

25. As a direct and proximate result of the acts and omissions of Defendant, Plaintiff has suffered damages for which Plaintiff now sues.

### Count Two
### Declaratory Relief

26. This Court has the power to declare rights, status and/or other legal relations between litigants and is a vehicle for addressing prospective issues relative to real property. Tex. Civ. Prac. & Rem. Code § 37.003(a). "A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code § 37.004(a).





27. A justiciable controversy exists as to the following matters:

a. Whether the Confidentiality Agreement is operative as an enforceable covenant not to compete;

b. If the Confidentiality Agreement is operative as an enforceable covenant not to compete, does it contain limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promise;

c. Whether Plaintiff has any Confidential Information of Defendant;

d. Whether Plaintiff's current knowledge of Defendant's operations is Confidential Information under the Confidentiality Agreement or Texas law; and

e. Whether Plaintiff's customer list is readily ascertainable.

28. In accordance with Texas Civil Practice and Remedies Code section 37.001, et seq., Plaintiff seeks the Court's declaration of one (1) or more of the following:

a. The Confidentiality Agreement is not operative as an enforceable covenant not to compete;

b. If the Confidentiality Agreement is operative as an enforceable covenant not to compete, it does not contain limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promise, and, as such is unenforceable;





c. Plaintiff has no Confidential Information of Defendant;

d. Whether Plaintiff's general knowledge of Defendant's operations is not Confidential Information under the Confidentiality Agreement or Texas law; and

e. Plaintiff's customer list is readily ascertainable, and is not Confidential Information as a result.

**Count Three**
**Tortious Interference**

29. Plaintiff incorporates all previous allegations as if fully set forth herein.

30. Plaintiff had negotiated an offer of employment with Bericap. Defendant willfully and intentionally interfered with this relationship by, among other things, threatening to exercise remedies that it did not possess if Bericap hired Plaintiff and violating Section 6 of the Separation Agreement. This conduct was independently tortious and constituted a breach of contract.

31. As the direct and proximate cause of the acts and omissions of Defendant, Plaintiff has suffered and continues to suffer actual damages or loss for which Plaintiff now sues.

**Count Four**
**Attorneys' Fees and Costs of Court**

32. Plaintiff incorporates all previous allegations as if fully set forth herein

33. As the result of the acts and omissions of Defendant, Plaintiff was forced to retain the undersigned counsel. Plaintiff seek his attorneys' fees and costs of litigation and is entitled to same pursuant to Tex. Civ. Prac. & Rem. Code §38.001 and §37.009 and under general legal principals.





**Demand for Jury Trial**

34. Plaintiff demands trial by jury.

**Prayer for Relief**

WHEREFORE, PREMISES CONSIDERED Plaintiff KEVIN WALSH respectfully prays that this pleading be accepted and filed, that PHOENIX CLOSURES, INCORPORATED be cited to appear and answer, and that, thereafter, the Court award the following relief:

a. Damages;

b. The declarations sought herein above;

c. Attorneys' fees and costs of litigation;

d. Pre and post judgment interest at the highest rate allowed; and

e. Such further and additional relief to which Plaintiff may show himself to be justly entitled.

Date: January 17, 2020

Respectfully submitted by:

**HOLMGREN JOHNSON: MITCHELL MADDEN, LLP**

By: */s/ Dennis Holmgren*
Dennis Holmgren
State Bar No. 24036799
Email: dennis@hjmmlegal.com
12081 North Central Expressway, Suite140
Dallas, Texas 75243
Telephone: 972-484-7780
Facsimile: 972-484-7743

Attorneys for Plaintiff



